Good morning, ladies and gentlemen. Our first case for argument this morning is Golat v. Wisconsin. Mr. Ullman. May it please the Court, my name is Adam Ullman and I represent the appellate Shannon Golat. The district court treated a protected activity, Ms. Golat, calling a potential EEOC witness as employee misconduct. Before we get into the merits, Mr. Ullman, I have a question about the identity of the parties. Who is the defendant in this case? The defendant is a Wisconsin court system. And what exactly is that? That is a state entity. There are also individual defendants as well, Your Honor. You say it's a state entity. I looked and could not find it anywhere in state law and no state decision has ever named it as a party. So who is the defendant? A department of the Wisconsin State Enterprise. It's a department? Yes. The court system. No. There is the Supreme Court of Wisconsin, there's the state of Wisconsin, and there's an administrator of the court system, just like the U.S. court system has a thing called the Administrative Office of the U.S. Courts. But there is no such thing as the United States court system. And so far as I can figure out, there's no such thing as the Wisconsin state court system. That's just something you've made up. So to be clear, Your Honor, you believe we have the wrong party in the Wisconsin court system? Well, can you tell me where in state law this entity is established? I cannot at this moment. You can't. Why? Because it isn't. This is a problem. Because you have to name real parties to litigation. Individuals are needed. No, you have to name real parties. You can't name fictitious parties plus a person. We will seek to leave, if summary judgment is reversed, we will seek to leave to amend it immediately. No, no. Now. It has to be done now. You can substitute parties under 28 U.S.C. 1653 to name the real party in interest. But you can't just make up names and sue them. It's kind of like suing Lake Michigan. It may be something that's there, but it's not a juridical entity. Please proceed. The district court treated a protected activity as misconduct. It treated Ms. Golak calling an EEOC witness as a fireable offense. The district court also weighed evidence, made credibility determinations, and pondered which party's version of the facts was most likely true. Those are questions for a jury. Lastly, the district court ignored facts and misapplied the law to the facts that it did address. The appellees in the reply brief don't dispute this. They actually asked this court to ignore the same facts that the district court ignored. But those facts are substantive and dispositive to summary judgment. First, I'd like to discuss the protected activity. Ms. Golak called a person that was at a family law hearing when Judge Anderson called her a lesbian between hearings. She thought that that woman heard Judge Anderson, so she called her. That is protected activity. This court in Runkle . . . I'm sorry. What is the protected activity? Her calling the potential witness for her EEOC complaint is part of an EEOC investigation. Would she reach out to this individual prior to there being an EEOC investigation? Leading up to it, yes. Her lawyer had her calling several witnesses, not just this one person, to get her complaint together. It was in early March, and that's when she filed her EEOC complaint. All right. The district court recognized that Ms. Golak offered that reasoning, but said that she doesn't explain why it matters. This matters because this court found in Runkle that Title VII prohibits employers from retaliating against employees because they've made a charge, testified, assisted, or participated in any manner in an investigation. That's precisely what she was doing. Now, unfortunately for Ms. Golak, she works at a courtroom. If she was an assistant to a financial advisor and her boss called her a lesbian in front of a potential client, there'd be no problem. But that colors this case, and I believe that colored that finding. It's important to note as well that Ms. Golak and Ms. Rosolowski didn't talk about the homicide case. Unfortunately, Ms. Rosolowski's parents were murdered, and she was to be a witness as a victim impact, to give a victim impact statement. That was not discussed. Moving on to the district court weighing evidence and credibility. This court found in Runkle that we do not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's facts are most likely to succeed. Additionally, it's a jury, not a judge, that should decide whether the inference is appropriate. Here the district court was provided with disputes and fact. On one side, this is concerning the vacuum video and the vacuum allegation. The police were investigating this. Two officers were reviewing video. They found that there was no wrongdoing on my client's part. The vacuum wasn't put in a laptop. A full-size vacuum was not put in a laptop bag. It never left her office, just as she said. HR, for some reason, was also reviewing this video and said, it's possible that she put a full-size vacuum in a laptop bag. That's a disputed fact for the jury. The judge in this case reviewed the video and said, well, maybe they're not being dishonest. Maybe she could have fit an entire vacuum in a laptop bag. We believe that's inappropriate, and that's a question for the jury, not for the judge at summary judgment. Moving on to ignored evidence and ignoring the Ortiz case. I'd like to do this through the retaliation claim and causation. First, this court found in Volvosek that after a complaint, discrimination and retaliation claims overlap. They're treated the same. Ms. Golat made many complaints. As the retaliation came on, she was complaining. The district court starts out its analysis of the retaliation claim by stating that Golat's retaliatory reference claim fails because no reasonable jury could find that Barna or Winton declined to hire her because of false information defendants had placed in her personnel file. That's just an implausible and illogical finding because the facts show differently. The facts show that Judge Barna, who was set to hire her, texted her and said, I can't hire you because of your employee record, because you called Ms. Rosolowski. Judge Winton had reached out to the DCA, inquiring with them to hire Ms. Golat. The DCA got HR involved. They held a Zoom meeting, and in that Zoom meeting, they showed that hiring judge her personnel file. She then declined to hire. Looking at those allegations, was she not permitted to view the personnel file? She certainly was, but it was HR and the DCA that said, no, we're not going to just rubber stamp this. You need to see her personnel file. They made an active choice to do that, but more so the district court said it wasn't her personnel file. When you say DCA, who do you mean? That's the district court administrator for the 10th District of Wisconsin. So when Christopher demonstrated or showed that to her, he was not violating any confidentiality policy? There's a question about that, Your Honor. Was that raised below as a question? No, it was not. Okay, so he was permitted then, based on the record we have, to show that to the judge that was considering hiring Ms. Golat. Correct. It's important to highlight that the district court states, because of the false information, it's an admission that it's false information, the investigations that went nowhere, the vacuum, et cetera. But he's saying that it wasn't because of the personnel file. What's the, I'm sorry, because of the false information in the personnel file? I'm just trying to understand your argument. Well, it's twofold. First, I believe the district court makes an admission that some of the information in the personnel file was false. That's the language used. But the district court states that them showing the personnel file to other judges, potential employers, didn't matter. But both of those judges, one explicitly said that it did matter, and the other judge declined after seeing the personnel file. So the violation that you're wanting us to hinge on is them showing the personnel file or the notion that there were false things included in the personnel file? The showing of. According to the district court, the showing of. Okay. I don't understand how it can be a violation of federal law to show a potential employer the personnel file of the applicant for a job. And I understand, and that's, I guess it was just showing that the district court wasn't weighing evidence. The point of that was the district court was not weighing evidence properly. I wish you'd address my question. How can it be a violation of federal law to show a potential employer the personnel file of the applicant for employment? I could understand how sticking false information in could be a problem, but you just answered Judge Pryor by saying it was a violation of federal law to show the personnel file at all to the new judge. And you're correct, Your Honor. The violation here is the papering of the file, the false information. The act of... So it's not a violation of federal law? The showing of it is not the violation. That's more of the blackballing to ensure that she does not get rehired. Okay, so what's the federal violation now? The federal violation is the papering of the file with false information. When you say papering, you mean including false statements? Correct. Pretextual... Because a file is nothing but paper. Correct. Including false statements. Thank you, Your Honor. Moving on, the Wisconsin court system or the defendants, apologies, the defendants made their retaliatory motive very clear. In 2019, Judge Anderson and Judge Boyle had a conference with Kaitlyn Frederick, who was the head of HR at the time, and she stated that she supported termination because of medical leave, because of the complaint that she made against Judge Anderson. They decided not to terminate and let things play out a little bit longer, and play out they did. She was investigated for travel reimbursement. She was never fired, right? She was fired. The district court did find that she was terminated. I wish you'd use the word fired. Terminated means executed, right? She has never been executed. She's still alive. Terminated with... Right? You've read spy novels. Anyway, what is the sense in which she was fired? Judge Anderson retired, and since court reporters are the personal appointments of the judge, she needed to get a new judge to hire her. How was she fired? The district court found already that she was fired. I'm not asking what the district judge found, I'm asking you. Understood. She was fired because of a false allegation, a pretext. No. Please explain to me how it is a firing if your employer retires and you need to apply for a job with somebody else. So no other reporters had to do this, and reporters submitted four affidavits saying that this is the first time they'd ever seen that, so it was atypical. It was outside of practice. I understand. The defendants state that you need to be rehired, but that's not what practice was. Practice was simply a rubber stamp and you keep working for them. Judge... Does a new judge get to select their own stenographer? If they want to. That's not my question. Exactly. Yes. And the new judge decided not to hire Goa. And there's evidence in the record that shows she was... You would have a better case if you used normal words rather than trying to treat this as something it is not. The practice for court reporters was the incoming judge would keep the court reporter. That's what had always happened. That was Ms. Golatz's experience and every other court reporter's experience in District 10. So your point is it's an unexplained deviation from established employment practices? That is my point, yes, yes, Your Honor. Thank you, Mr. Ullman. Mr. Kilpatrick, the first question I have for you is, who is your client? My clients are the defendant's appellees, the Wisconsin State Court system and several... And what is the Wisconsin State Court system? It is not an entity that exists in statute.  It is not an entity. Why isn't that the first statement in your brief? It doesn't exist. Correct. It does not exist. So who is the proper defendant in a case like this? Likely it would be the director of the Wisconsin State Courts. The director of the State Courts. Maybe the State Supreme Court? The State Supreme Court provides the director of State Courts with the administrative responsibilities. So the director of State Courts may be in an official capacity. Why are you relying on the court to point out that the defendant doesn't exist? Unfortunately, it wasn't raised below. I chose not to raise it here for the first time. But I accept the court's statement that there is no entity. You can't sue a name that's been made up. You have to sue real things, real entities. Who appoints the director of the State Courts? The Supreme Court justices or the chief justice. I'm not quite sure who. So it's a statutory position? Yes, Your Honor. I see. All right. Please proceed. We will be asking for supplemental memos on this subject. Understood, Your Honor. Thank you. Good morning, and may it please the court. This court should affirm the district court's granting of summary judgment in favor of the defendant's and the appellee's and Ms. Golat's three claims. As to her hostile work environment claim, under the totality of the circumstances, that evidence in the record and that the district court determined did not amount to a severe and pervasive hostile environment based on her sex. While Ms. Golat, under the undisputed facts as determined by the district court, was subject to crude and offensive comments related to her sex, they did not rise to the severe or pervasive standard as case law requires. The comments made by, or allegedly made by Judge Anderson, were they made directly to her or were they made to a group? What was the, were they made in a suggestive way or were they just general bragging, being a dope? Under the facts as determined by the district court, Judge Anderson allegedly simply stated to Ms. Golat something about going to her office and crying. I think that was one of the allegedly direct comments, joking in jest that she was a lesbian because she drove a Subaru. Nothing directly. Well, what about this, I can sleep with any woman in the county? Those, I believe, Your Honor. Joke about a condom and about the size of one of his organs. Right, those were allegations that Ms. Golat made in the EEOC complaint that was dated, I believe, August of 2023. That raises the question of whether we can consider them, whether that's a sworn statement. Right, they're right. The district court decided that that was inadmissible hearsay. Let's consider them admissible for purposes of argument. Okay. How were they made? Even if this court were to consider those as it could de novo review, it still wouldn't tip the scales in favor of Ms. Golat. Those comments, along with the other findings that the district court made about comments and actions based on Ms. Golat's sex, still don't rise to the level that this court has found constitutes severe or pervasive. Does Judge Anderson's status as a judge make a difference in terms of the severity of the statement? We use the statement as to be severe or pervasive. Does his status as a judge make a difference? I don't believe his status as a judge makes a difference. He certainly was her supervisor, and under the case law, supervisor statements are given more weight. But again, here, there weren't many direct statements to Ms. Golat based on her sex. A lot of the comments that she complains about were secondhand comments. Those are given much less weight under this court's case law. Could I move on for a moment, if I may, without breaking the outline of your argument? The part of this thing, I guess, that bothered me more than any, had to do with the alleged failure to accommodate and the retaliation, I claim. This idea that she had to take a full day off to go to the doctor, that she couldn't take less than that, sounded like a fairly harsh personnel policy to have, and the reason sounded like maybe something a jury ought to evaluate. Well, we can't get somebody in. We have to make you take the whole day off because we can only get a replacement for a full day. That sounded like a lazy administrator's way out. First, I want to point out that in the reply brief of Ms. Golat, she did not address the appellee's arguments against the Rehabilitation Act failure to accommodate claim. So our position here is that she's abandoned that claim for not responding at all in her reply brief. But as to the requirement to take one day leave, in the past it is true that she had been given the ability to take less than a day, but the law states that if the employer bends over backwards and provides more than what the law requires, it is not then subject to unlawful action if it complies with the statement of the policy. Understood, but the question remains, was the idea of letting her take less than one day off, was that bending over backwards, and why isn't that a jury question? Well, there's been no evidence that Ms. Golat showed that that statement, that she needed to take one day full day of sick day leave, was phony or that it was a lie. So the evidence is that the court system, the state court director decided, the office there, decided that it was too difficult to try to find court reporters for half days. Well, because the record we have in front of us doesn't show that at this point, does it? We have a fairly offhanded remark by Judge Anderson that it couldn't be done, but that's about it. Right, but I believe under the case law, Your Honor, that that is a legitimate, non-retaliatory reason, and Ms. Golat needs to show that's a lie, and she hasn't. Even though there is in the record evidence that it was not a policy that was followed in all cases in the past. At times, she was allowed to take an hour, two hours, whatever she needed. Right, in the past, that's correct. So why isn't the deviation from an established approach evidence that something was up? Again, Your Honor, I'm just going to state that any deviation from the past was allowing more leave, more accommodation that was required by the law. I see. I see your view. That's my statement, Your Honor. Thank you. Thank you. Getting back to the hostile work environment claim, again, Pelley's state that the evidence does not show severe or pervasive harassment. I also must point out that Ms. Golat has abandoned her claims of hostile work environment based on equal protection against the individual defendants of Pelley's. That was, I believe, abandoned in the district court, and there was no briefing that targeted any of the individual defendants on the hostile work environment claims under the equal protection clause. So I think, again, those claims have been abandoned against the individual defendants. Moving on to her retaliation claim, Ms. Golat did not adduce evidence that either her complaints about the harassment based on her sex by Judge Anderson or others or her complaints about the accommodation requests were the but-for cause of a one-week suspension or her non-hire by Judge Anderson's successor and another judge in another county. In other words, these material adverse actions would have happened even if Ms. Golat had not complained. And Ms. Golat's argument that her contacting a family member of a crime victim in a pending homicide trial before Judge Anderson is a protected activity is unconvincing. As the defendants pointed out in the response brief, she is pointing to the participation clause in the statute, participation in any manner in an investigation proceeding or hearing, but the commission was not engaged in any investigation or hearing. She was contacting family members and a witness in a pending case before the judge that she was working for during a trial, and that should not be considered protected activity. How should it have been handled? She had to file this complaint if she wanted to use this person as a witness. You say she couldn't contact her. How should she have handled it? Well, she could have attempted, and I believe she did, contact other people who were in the courtroom. She claims that it was made in open court, and so if there were other people in there, she could have done that. She could have asked if she was under some type of a time deadline. She could have asked the EOC for an extension of some sort until the trial was over. The point was that this was a pending homicide trial, and she was the court reporter for the presiding judge who decided to contact family members of crime victims in this case, and that under the case law is not a protected activity, and as we made arguments in the response brief, it should not even be considered protected activity under the statute. So all really Ms. Golat can point to in support of her retaliation claim is timing, but that rarely is sufficient to allow a retaliation claim to get to trial, and it is not here. Ms. Golat's one-week suspension was proper and not shown to be phony. It was not shown to be a lie. She did not prevail on a pretext argument. And the same goes for her non-hire by Judges Barna and Winton. There is no requirement that Ms. Golat be hired by Judge Barna, who succeeded Judge Anderson, and there is no evidence that he did. But the argument is not that that was a violation. It was the custom, and to go against that custom. Right, and for the purposes of the retaliation claim, for a material adverse action, the defendants here did not choose to disagree with the district court's determination that that was a material adverse action. But there is no requirement that Judge Barna, who succeeded Judge Anderson, keep on a personal appointment by Judge Anderson, who was Ms. Golat. Ms. Golat does not show retaliatory evidence for either of these complaints of harassment or her complaints about the accommodation requests that she had made. Again, here, Title VII is likely her only claim because her reply brief did not brief. Did any of the successor judges, one for Judge Anderson's slot and the judge in the other county, did they give any reason why they did not hire her other than I've reviewed your personnel file? I do not believe they did. I don't believe there's anything in the record. I don't think the district court made any determinations that way. They certainly saw the personnel file, and I do disagree with my opposing counsel that there was anything false in there. There was information about investigations that didn't lead to eventual discipline, but that doesn't mean that there's anything false in there. I see my time is up. I ask that the district court decision be affirmed. Thank you very much. The case is taken under advisement.